*NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOHN FLORENCE,** | **Civil Action No. 11-5044 (JLL)** |
| Petitioner, | |
| v. | **OPINION** |
| **ROY L. HENDRICKS, et al.,** | |
| Respondents. | |

**LINARES**, Chief District Judge:

Presently before the Court is a petition for a writ of habeas corpus of John Florence ("Petitioner") brought pursuant to 28 U.S.C. § 2254 challenging Petitioner's state court felony murder conviction. (ECF No. 26). Following an order to answer, Respondents filed a response in opposition to the petition. (ECF No. 28). For the following reasons, this Court will deny the petition and will deny Petitioner a certificate of appealability.

## I. BACKGROUND

Petitioner's conviction stems from a series of robberies in Essex County, New Jersey that spanned the course of several hours from January 15 through January 16, 1993, and resulted in the death of twenty-two-year-old Bunny Burt. Petitioner, along with his co-defendants, Thomas Parker and Rashon Barkley, were charged in a twenty-two-count indictment. (ECF No. 28-1 at 2-24). At Petitioner's severed trial, several of the robbery victims as well as eyewitnesses testified about Petitioner and his co-defendants' actions that evening. Moreover, some of the fruits of the robberies, which included several jackets taken from the robbery victims and the victims' other

1

personal effects, were recovered within close proximity of Rashon Barkley, as well as in one of the vehicles used during the robbery.

After a jury trial, Petitioner was found guilty of fourteen counts as follows: Count One, second degree conspiracy; Counts Ten and Eleven, second-degree robbery; Count Twelve, reckless manslaughter; Count Thirteen, felony murder; Count Fourteen, third-degree unlawful possession of a weapon; Count Fifteen, second-degree possession of a weapon for an unlawful purpose; Count Sixteen, third-degree theft; Counts Seventeen and Eighteen, first-degree robbery; Count Nineteen, second-degree aggravated assault; Count Twenty, third-degree unlawful possession of a weapon; Count Twenty-one, second-degree possession of a weapon for an unlawful purpose; Count Twenty-two, third-degree theft. (ECF No. 28-1 at 26). Petitioner was acquitted of Counts Three, Four, Five, Six, Seven, Eight and Nine. (*Id.*) The court dismissed Count Two prior to trial. (*Id.*)

Petitioner was sentenced to an aggregate term of life plus twenty years with a total of forty years parole ineligibility. (*Id.*) Petitioner's conviction was affirmed by the Appellate Division on February 10, 1997. (*Id.* at 40). The Supreme Court of New Jersey subsequently denied his petition for certification on May 21, 1997. *State v. Florence*, 149 N.J. 410 (1997). Petitioner's one-year statute of limitations for Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA") purposes commenced on August 20, 1997, as he did not file a petition for certification with the United States Supreme Court. *See* 28 U.S.C. § 2244(d)(1)(A). Petitioner then filed a state petition for post-conviction relief ("PCR") dated February 28, 1998. (ECF No. 28-3 at 121). The PCR was denied by the Honorable Judge Theodore A. Winard on March 16, 1999. (ECF No. 28-3 at 162). Petitioner filed a notice of appeal in the Appellate Division on July 12, 1999. (*Id.* at 163). Notwithstanding Petitioner's PCR appeal being filed 72 days late, the Appellate Division

adjudicated the matter on the merits, making no mention of its timeliness. The appeal was denied by the Appellate Division on October 18, 2000. (ECF No. 28-7 at 49-53). Certification to the Supreme Court of New Jersey was subsequently denied on February 26, 2001. *State v. Florence*, 167 N.J. 934 (2001).

Petitioner filed a federal habeas petition on July 31, 2001, albeit under a different case number. *See Florence v. Hendricks*, 01-3596. Petitioner submits in his traverse and this Court agrees, that contrary to Respondents' claim that Petitioner's first federal habeas filing was filed nine months after the state Supreme Court denied the petition for certification, rendering it time barred; it was actually filed five months or 154 days after the state court's final judgment on his PCR petition. The Honorable William H. Walls, U.S.D.J., ordered that Petitioner's petition should not be dismissed for failure to file within the one-year statute of limitations period. (ECF No. 28-2 at 69; 01-3596, ECF No. 3). Judge Walls subsequently dismissed the petition without prejudice to allow Petitioner an opportunity to file any unexhausted claims in state court. (01-3596, ECF No. 12). On August 29, 2003, Petitioner filed a second state PCR.[1] (*Id.*, ECF No. 13-1 at 9).

In 2006, after receiving information that potentially prejudicial extraneous information was discussed amongst two jurors, Petitioner filed a motion to voir dire a juror. (ECF No. 36-2 at 8). Petitioner submits that his second PCR was pending when this newly discovered juror information surfaced. (01-3596, ECF No. 13 at 5). The state court granted a hearing. (ECF No. 36-5). After the hearing, Petitioner filed a motion for a new trial but the motion was denied on January 10, 2008. (ECF No. 36-6).

During the pendency of the proceedings involving the alleged juror misconduct, the state trial court acknowledged in a letter dated March 13, 2007, that Petitioner also had a second PCR

---

[1] Petitioner submitted only a copy of the cover letter with the state court's date stamp of September 15, 2003. (01-3596, ECF No. 13-1 at 9).

pending before the court. (01-3596, ECF No. 13-1 at 19). The court noted that Petitioner's PCR counsel requested additional time to file submissions. (*Id.*) As Respondents note in their Answer, the record is silent about Petitioner having ever filed a submission in support of his second PCR. (ECF No. 28 at 42).

After filing an amended federal habeas petition in this Court on August 30, 2011, Petitioner requested a stay and abeyance in order to have the as of yet undisposed second PCR claim resolved. (ECF No. 2). Respondents argued that Petitioner's federal habeas petition was time-barred. (ECF No. 8). This Court granted Petitioner's Motion for Stay and Abeyance in order for him to exhaust his jury instructions-related claim in state court. (ECF No. 18). In the Court's order granting the stay and abeyance, the Court withheld a finding on the AEDPA timeliness issue until after Petitioner's return from state court. (ECF No. 18 at 2).

Petitioner's second PCR was denied on September 25, 2013. (ECF No. 28-5 at 2). His motion to file notice of appeal as within time was denied on January 9, 2015. (ECF No. 36-7 at 2). On June 19, 2015, Petitioner's petition for certification to the Supreme Court of New Jersey was denied. *State v. Florence*, 222 N.J. 14 (2015). Petitioner filed a motion to reopen the federal habeas case in this Court on July 14, 2015. (ECF No. 24). He filed the instant amended petition for habeas relief under § 2254 on July 24, 2015.[2] (ECF No. 26). Respondents filed an Answer on October 21, 2015.[3] (ECF No. 28). Petitioner filed a traverse on June 22, 2017. (ECF No. 34). Petitioner's amended habeas petition raises the following claims:

1. The verdict violated the Fourteenth Amendment's Due Process Clause.

---

[2] Respondents continue to submit that Petitioner's entire federal habeas petition is time-barred under AEDPA's statute of limitations. (ECF No. 28 at 34-39). Notwithstanding the complicated procedural history, this Court will consider the habeas petition on the merits.

[3] Pursuant to an order of this Court dated July 19, 2018, Respondents filed Petitioner's post-conviction relief hearing transcripts and trial transcripts on July 26, 2018, and July 31, 2018, respectively. (ECF Nos. 36-37).

2. Trial court's jury instructions violated his Sixth and Fourteenth Amendment rights.

3. Ineffective assistance of trial counsel.

4. Denial of his right to a fair and impartial jury.

5. Trial court erroneously admitted an unduly suggestive out of court identification.

6. Cumulative impact of these errors (error of a partial jury panel and erroneous jury instructions) deprived Petitioner of a fair trial.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, 567 U.S. 37, 40-41 (2012). Under the statute, as amended by AEDPA, district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, --- U.S. ---, ---, 135 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. ANALYSIS

The petition raises six grounds for relief. For the reasons explained in this section, the Court finds that Petitioner's claims do not warrant federal habeas relief.

A.    Verdict Violated Petitioner's Fourteenth Amendment Right to Due Process

In Ground One, Petitioner alleges that the jury's inconsistent verdict violated his Fourteenth Amendment right to due process. (ECF No. 26 at 27-28).

His petition states:

> More specifically, the jury returned a verdict convicting petitioner guilty of second degree (unarmed) robbery of the homicide victim, possession of a firearm without a permit and possession of it with intent to use it unlawfully, felony murder and reckless manslaughter where the state maintained the killing was had by a firearm and no evidence showed any taking. . . .
>
> In essence, the verdict returned itself makes petitioner's point on this issue by lending credence to it. A factual finding was had indicating on one hand that petitioner possessed a firearm with the intent to use it unlawfully and did not have a permit to carry it, but on the other, it found that petitioner committed an unarmed robbery. If anything, an opposite finding of guilt of first degree robbery based on serious bodily injury inflicted absent use of any weapon could have been

> accomplished as standing on a logical basis- if petitioner was
> indicted under alternative theories of first degree robbery alleging
> either being armed or inflicting serious bodily harm.

(*Id.* at 27-28).

Generally, "inconsistent verdicts are constitutionally tolerable." *Dowling v. United States*,

493 U.S. 342, 353-54 (1990) (citation omitted). Challenges to purported inconsistent verdicts are

analyzed under the standard articulated by the Supreme Court in *Dunn v. United States*, 284 U.S.

390 (1932). There, the Court declined to disturb a conviction stemming from a jury verdict just

because it was inconsistent with its acquittal on another count. *Id.* at 393-94. The Supreme Court

upheld this reasoning in *United States v. Powell*, 469 U.S. 57 (1984), when it reiterated that

Powell's conviction on some counts could not be attacked just because it was inconsistent with her

acquittal on other counts. Powell, who was charged with drug conspiracy as well as overt acts

such as drug possession and facilitating the conspiracy through telephonic communication, was

acquitted of the actual conspiracy and drug possession counts but convicted of facilitating the

underlying felonies through the telephone conversations. *Id.* at 59-60. The Supreme Court

rejected her argument that acquittal on the conspiracy and drug possession counts demanded that

the Court vacate the facilitation charges.

> This problem is not altered when the trial judge instructs the jury
> that it must find the defendant guilty of the predicate offense to
> convict on the compound offense. Although such an instruction
> might indicate that the counts are no longer independent, if
> inconsistent verdicts are nevertheless reached those verdicts still are
> likely to be the result of mistake, or lenity, and therefore are subject
> to the *Dunn* rationale. Given this impasse, the factors detailed
> above—the Government's inability to invoke review, the general
> reluctance to inquire into the workings of the jury, and the possible
> exercise of lenity—suggest that the best course to take is simply to
> insulate jury verdicts from review on this ground.

*Id.* at 68-69.

Petitioner appears to be arguing that the jury's guilty verdict with respect to the possession of a firearm with intent to use charge was inconsistent with the second degree (unarmed) robbery conviction. (ECF No. 26 at 28). According to Petitioner, if he was in fact in possession of a weapon, he should have been found guilty of "first degree robbery based on serious bodily injury inflicted absent use of any weapon could have been accomplished as standing on a logical basis- if petitioner was indicted under alternative theories of first degree robbery alleging either being armed or inflicting serious bodily harm." This argument totally ignores that Petitioner was also convicted of two counts of first degree robbery pursuant to N.J.S.A. 2C:15-1 as well as the second-degree robbery charges. Therefore, Petitioner has not established that the verdicts were inconsistent and certainly not in violation of his constitutional rights.

The petition is unclear what, if any, other counts of conviction Petitioner is alleging were inconsistent with one another. Petitioner argues in another section of his federal habeas petition that the felony murder conviction was inconsistent with the evidence presented about his involvement in Bunny Burt's robbery. Unlike Powell, who was acquitted of the actual conspiracy but convicted of the overt acts in commission of the conspiracy, Petitioner here was convicted of first and second degree robbery, which are predicate offenses of felony murder. N.J.S.A. 2C:11-3(a)(3). Petitioner's acquittal on four of the six first degree robbery counts is inconsequential to his argument. Assuming *arguendo* that Petitioner considers the felony murder conviction inconsistent with his acquittal on the first-degree robbery count against victim Bunny Burt, Petitioner was nonetheless convicted of second degree robbery of Bunny Burt.

Respondents point out that New Jersey law provides an affirmative defense to felony murder when a person engaged in the commission of a robbery presents evidence that he did not (1) commit or aid in the commission of a homicide; (2) did not possess a deadly weapon; (3) had

8

no reasonable ground to believe that any other participant was armed with a deadly weapon; and (4) had no reasonable ground to believe that another participant intended to engage in conduct likely to result in death or serious physical injury. N.J.S.A. 2C:11-3(a)(3). Here, Petitioner did not present such evidence.

In light of the foregoing, Petitioner has not established how the jury's verdict was inconsistent. Furthermore, he has not shown how his due process rights were violated. Petitioner is denied relief as to this claim.

B.     Trial Court's Erroneous Jury Instructions

Petitioner's next claims concern the trial court's jury instructions on the felony murder, robbery, and possession of a firearm counts. He argues that the recharge and the fact that a substitute judge responded to jury questions during deliberations violated his right to a fair trial. (ECF No. 26 at 29-36). In their Answer, Respondents argue that Petitioner should be precluded from raising this claim because it is unexhausted. (ECF No. 28 at 33-34). Petitioner does not appear to have raised this claim in any state proceedings and has therefore not exhausted this claim in state court as required by federal habeas law. *See* 28 U.S.C. § 2254(b)(1)(A).

The exhaustion requirement is not a jurisdictional requirement to the exercise of habeas corpus jurisdiction over the merits of a state prisoner's claims, and a district court may deny a claim on its merits despite non-exhaustion "if it is perfectly clear that the applicant does not raise even a colorable federal claim." *Granberry v. Greer*, 481 U.S. 129, 135 (1987). Notwithstanding Petitioner's failure to exhaust this claim, the Court will proceed to address the substantive merits of the claim. 28 U.S.C. § 2254(b)(2); *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997) ("[Section 2254(b)(2) authorizes] federal courts to deny unexhausted claims on the merits.").

As the Respondents note, Petitioner does not specify how these instructions constitute a violation of his right to a fair trial. (ECF No. 28 at 10).

> [Q]uestions relating to jury charges are normally matters of state law and not cognizable in federal habeas review. *See Engle v. Isaac*, 456 U.S. 107 (1982); *Henderson v. Kibbe*, 431 U.S. 145 (1977); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 309 (3d Cir.), cert. denied, 502 U.S. 902 (1991); *Grecco v. O'Lone*, 661 F.Supp. 408, 412 (D.N.J.1987). [T]he district court must consider "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' ... not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" *Henderson*, 431 U.S. at 154 (quoting *Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973)).

*Porter v. Brown*, No. 04-4415 (RBK), 2006 WL 2640624, at *8 (D.N.J. Sept. 12, 2006).

"In reviewing a jury instruction, we look to see if the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury." *United States v. Hart*, 273 F.3d 363, 373 (3d Cir. 2001) (citation and quotation marks omitted). Here, the trial judge that presided over most of the trial proceedings, Judge Winard, provided accurate jury instructions as to all counts. (ECF No. 37-15 at 68-136). The following excerpts provide the instructions given with respect to the three instructions which Petitioner alleges violated his constitutional rights.

<u>Jury Instructions Provided by Judge Winard</u>

First with respect to the felony murder count, the trial judge provided the following:

> Moving on to count 13 felony murder. That count reads as follows: Thomas Parker, Rashone Barkley and John Florence on the 16th day of June, 1993 in the City of Newark, while in the course of committing a robbery upon the person Bunny Burt or in the - - in an attempt thereat or during flight therefrom did kill the said Bunny Burt.
>
> The state charges that Bunny Burt was shot and killed while the defendant with Thomas Parker and Rashone Barkley was engaged

in the commission of or an attempt to commit a robbery. The section of the statute that governs felony murder reads as follows.

Quote: Criminal homicide constitutes murder when it is committed when the actor, either acting alone or with one or more other persons, is engaged in the commission of or an attempt to commit in this case a robbery and in the course of such crime or in the immediate flight therefrom any person causes the death of a person other than one of the participants.

Again I will repeat that definition. Criminal homicide constitutes murder when it is committed when the actor, either acting alone or with one or more other persons, is engaged in the commission of or an attempt to commit a robbery and in the course of such crime or the immediate flight therefrom any person causes the death of a person other than one of the participants.

Under this law it does not matter whether the act which caused the death was committed by the defendant or by another participant in the crime of robbery other than the defendant. It does not matter that the act which caused the death was committed recklessly or unintentionally or accidentally. Each participant, each participant in the crime of robbery, whether the participant himself or not, would be guilty of felony murder.

In order for you to find the defendant guilty of felony murder in this case the state is required to prove beyond a reasonable doubt from all the evidence in the case each of the following elements. Number one, that on or about January 16th the defendant acting either as a principal or as an accomplice was engaged in the - - in the commission of or an attempt to commit the crime of robbery.

Number 2, that the death of Bunny Burt was caused at some point at some time within the course of the commission of that crime by one of the participants in that crime of robbery.

The first element requires the state to prove beyond a reasonable doubt that the defendant acting either as a principal or as an accomplice was engaged in the commission of or the attempt to commit the crime of robbery. The second element requires the state to establish beyond a reasonable doubt that Bunny Burt's death was caused during the commission of or attempt to commit robbery by one of the participants in that robbery.

In order to meet its burden of proof the state must prove beyond a reasonable doubt number one, that but for defendant's conduct or

the conduct of one or more other with whom the defendant participated in the commission of or attempt to commit robbery, the victim would not have died.

In other words that the victim's death would not have occurred without the commission of the robbery. Number 2, the victim's death was a probable consequence of the commission of the crime of robbery. In other words for the death to be a probable consequence of the robbery, the death must not have been too remote or too accidentally or too dependent on another's volitional acts to have a just bearing on the defendant's liability with the gravity of his offense.

In other words you must decide that the state has proven beyond a reasonable doubt that under all the circumstances the death did not occur in such an unexpected or unusual manner that it would be unjust to find the defendant responsible for the death.

If you find, after a consideration of all the evidence, that the state has proven to your satisfaction beyond a reasonable doubt each of the elements of the offense as I have defined them for you, that is number one, that the defendant acting as a principal or as an accomplice was engaged in the commission of or attempt to commit or flight after committing or attempting to commit the crime of robbery and number 2, that the death of Bunny Burt was caused at sometime within the course of the commission of that crime by one of the participants in that crime, then you must find the defendant guilty of felony murder.

On the other hand, if you find beyond a reasonable doubt that the state has failed to prove to your satisfaction beyond a reasonable doubt any one or more of these elements of the crime charged as I have explained it to you, then you must find the defendant not guilty of felony murder.

If the state has failed to prove beyond a reasonable doubt that either Thomas Parker, Rashone Barkley or the defendant caused the death of the victim, then the defendant should be found not guilty of these of this offense.

(ECF No. 37-15 at 121-24).

Next, Judge Winard provided the jury with the following instructions for the robbery offense.

Now the defendant is charged in counts 3, 5, 6, 7, 10, 11, 17 and 18 with the crime of robbery. Again counts 3, 5, 6, 7, 10, 11, 17 and 18 charged with the crime of robbery. And these counts of the indictment allege that the defendant on the 16th day of January, 1993 did commit acts of robbery on Phylissa James in count 3; Rajhan Lewis in count 5; Felicia Lewis in count 6 and Mary Williams in count 7; Bunny Burt in count 10; Sheila Rodriguez in count 11; Dwayne Harris in count 17 and Tracy Bowers in count 18.

Now the pertinent part of the statute upon which this indictment is based provides as follows: A person is guilty of robbery if, in the course of committing a theft, he knowingly inflicts bodily injury or uses force on another or threatens another with or purposefully puts him in fear of immediate bodily injury.

This definition is important. I will repeat this definition. A person is guilty of robbery if, in the course of committing a theft, he knowingly inflicts bodily injury or uses force on another or threatens another with or purposefully puts him in fear of immediate bodily injury.

In order to find the defendant guilty of robbery the state is required to prove each of the following elements beyond a reasonable doubt. Number one, that one of the participants was in the course of committing a theft. Number 2, that while in the course of committing that theft the participant knowingly inflicted bodily injury and 3, that the defendant John Florence either committed this offense himself or acted as an accomplice of another, as I have defined that term for you in the commission of that offense.

As I have said the state must prove beyond a reasonable doubt that one of the participants was in the course of committing a theft. And you're advised that an act is considered to be in the course of committing a theft if it occurs in an attempt to commit the theft; during the commission of the theft or in immediate flight after the attempt or commission.

I will repeat that for your benefit. An act is considered to be in the course of committing a theft if it occurs in an attempt to commit the theft; during the commission of the theft or in immediate flight after the attempt or commission.

Theft is defined as the unlawful taking or exercise of control over property of another with the purpose to deprive him or her thereof. A person is guilty of an attempt, an attempt to commit a crime, acting with the kind of culpability required for the commission of

the crime if he purposefully does anything which, under the circumstances as a reasonable person would believe them to be, is an act or acts constituting a substantial step in the course of conduct planed [SIC] to culminate in the commission of the crime.

In this regard the state must prove the following elements beyond a reasonable doubt. That a person acted with the same culpability as required for the actual crime. That means to be guilty of an attempt to commit theft, the person must have the same state of mind that is necessary to find him guilty of theft itself.

If a person acts purposefully it is his conscious object to engage in that conduct or to cause that result. And number 2, the state must prove beyond a reasonable doubt that what the person purposefully did is an act or acts constituting a substantial step in a course of conduct planned to culminate in the commission of a theft.

The steps taken by the person must be those which are corroborative of the person's purpose to commit a theft. The person must be shown to have had a firmness of purpose in light of the steps taken and those steps must be substantial ones and not preparatory ones.

You should consider that act or those acts which progress or advance in the accomplishment of the crime and are not that remotely connected with and indirectly related to the commission of the crime.

Again I have used the words with purpose and you're going hear me use that word again. A person acts purposefully with respect to his conduct or a result thereof if it is his conscious object to engage in that kind of conduct or to cause such a result.

In addition to proving beyond a reasonable doubt that one of the participants was in the course of committing a theft, the state must also prove beyond a reasonable doubt that while in the course of committing the theft number one, the person knowingly inflicted bodily injury or used force upon another.

A person acts knowingly with respect to a result of his conduct if he is aware and he is practically certain that his conduct will cause such a result. A person acts knowingly if he is aware that his conduct is of that nature.

Bodily injury means physical pain illness or impairment of physical condition. Force means an amount of physical power or strength used against the victim not against the victim's property. The force

need not entail pain or bodily harm and need not leave any mark. However, the force must be greater than that necessary to snatch the object from the victim's grasp or the victim's person and the force must be directed against the victim and not against the victim's property.

Or number 2, the person threatened another with or purposefully put him in fear, him or her in fear of immediate bodily injury. Although no bodily injury need have resulted, the prosecution must prove beyond a reasonable doubt that the person either threatened the victim with or put him or her in fear of such bodily injury.

Now our New Jersey law provides that robbery is a crime of the second degree robbery - - is a crime of the second degree, except it becomes a crime of the first degree if the robber number one, is armed with or uses or threatens the immediate use of a deadly weapon or if the robber purposefully inflicted or attempted to inflict serious bodily injury.

Again a robbery is a crime of the second degree except it is a crime of the first degree if the robber is armed with or uses or threatens the immediate use of a deadly weapon or if the robber purposefully inflicted or attempted to inflict serious bodily injury.

Therefore, ladies and gentlemen, to find the defendant guilty of first degree robbery, the state must prove beyond a reasonable doubt, in addition to the typical robbery elements that I have already mentioned number one, that the person who committed the robbery was armed with, used or threated the immediate use of a deadly weapon.

And 2, that the defendant John Florence either committed the offense himself or acting as an accomplice to another had the purpose to promote or facilitate the robbery with the use of a deadly weapon or that the person who committed the robbery purposefully inflicted or attempted to inflict serious bodily injury and that the defendant Florence either committed that offense himself or, acting as an accomplice to another, had the purpose to promote or facilitate the robbery, whereby someone inflicted or attempted to inflict serious bodily injury.

Now in this case it is alleged that one of the participants was either armed with or used or threatened the immediate use of a deadly weapon while in the course of committing the robbery—robberies of Phylissa James, Rajhan Lewis, Felicia Lewis, Mary Williams, Bunny Burt, Sheila Rodriquez, Dwayne Harris and Tracy Bowers.

A deadly weapon is a firearm or any other weapon which, in the manner it is used or intended to be used, is known to be capable of producing death or serious bodily injury resulting in death or which, in the manner it is fashioned, would lead the victim reasonably to believe it to be capable of producing death or serious bodily injury.

Serious bodily injury means bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member.

Now in this case in count 3, count 3 it is alleged that one of the participants purposefully inflicted or attempted to inflict serious bodily injury on Phylissa James while in the course of committing a theft. Again I remind you serious bodily injury means bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ.

In the case of all alleged robbery victims, if you find the state has not proven beyond a reasonable doubt any element of the crime of robbery as I have defined that crime to you, then you must find the defendant not guilty.

In the case of Phylissa James, if you find that the state has proven beyond a reasonable doubt that one of the participants committed a crime of robbery against Phylissa James, as I have defined that crime and you find beyond a reasonable doubt that the defendant John Florence either committed that crime or acted as an accomplice with respect to that crime, but you have a reasonable doubt as to whether the person used or threatened the use of a deadly weapon upon the commission of the robbery and you have a reasonable doubt that the person purposefully inflicted or attempted to inflict serious bodily injury upon Phylissa James or you have a reasonable doubt that John Florence, if acting as an accomplice had the purpose to promote or facilitate that offense, then you will find the defendant guilty of robbery in the second degree.

In the case of Phylissa James, if you find beyond a reasonable doubt that one of the participants committed the crime of robbery against Phylissa James and you find beyond a reasonable doubt that either the person was armed with a deadly weapon or used or threatened the immediate use of a deadly weapon during the commission of the robbery or the person purposefully inflicted or attempted to inflict serious bodily injury during the commission of the robbery and you

find beyond a reasonable doubt that the defendant Florence either committed that offense or acted as an accomplice to another in the commission of that offense, having a purpose to promote or facilitate that offense, then you will find the defendant guilty of robbery in the first degree.

In the case of all the alleged robbery victims Phylissa James, Rajhan Lewis, Felicia Lewis, Mary Williams, Bunny Burt, Shiel[a] Rodriquez, Dwayne Harris and Tracy Bowers, if you find beyond a reasonable doubt that one of the participants committed a crime of robbery and you find beyond a reasonable doubt that the defendant Florence either committed the crime or acted as an accomplice to another in the commission of that crime, but you have a reasonable doubt as to whether the person was armed with or used or threatened the immediate use of a deadly weapon at the time of the commission of the robbery or you have a reasonable doubt that the defendant, if acting as an accomplice, had the purpose to promote or facilitate that offense, then you will find the defendant guilty of robbery in the second degree.

In the case of alleged robbery victim, if you find beyond a reasonable doubt that one of the participants committed the crime of robbery and you find beyond a reasonable doubt that the person was armed with a deadly weapon or used or threatened the immediate use of a deadly weapon or used or threatened the immediate use of a deadly weapon and you find further beyond a reasonable doubt that the defendant Florence either committed the offense or acted as an accomplice to another in the commission of that offense and had the purpose to promote or facilitate such an offense, then you will find the defendant guilty of robbery in the first degree.

(ECF No. 37-15 at 90-99).

Finally, Petitioner challenges the trial court's jury instructions on possession of a firearm which were provided as follows:

Moving on to counts 9, 15 and 21 of the indictment. The defendant is charged with the unlawful possession of a firearm with the purpose to use it unlawfully against the person or property of another. More specifically in Irvington, Newark and East Orange respectively. The statute reads in pertinent part:

17

Any person who has in his possession any firearm with the purpose to use it unlawfully against the person or property of another guilty of a crime. In order for you to find the defendant Mr. Florence guilty of possession of a firearm with the purpose to use it against the person or property of another, the state is required to prove the following elements.

Number one, that there was a firearm and number 2, that the defendant possessed the firearm either actually or constructively or jointly. And 3, that the defendant had the purpose or objective that the firearm be used against the person of another. In this case against Felicia Lewis, Rajhan Lewis and/or Mary Williams, with respect to count 9. Against Bunny Burt and/or Sheila Rodriquez, with respect to 15. Against Dwayne Harris and/or Tracy Bowers, with respect to count 21 and 4.

Defendant acting as a principal or as an accomplice intended that the firearm be used in a manner that was prohibited by law. A firearm of course includes a handgun, a rifle or a shotgun. I have already defined for you what actual and constructive joint possession is.

The third element is that the defendant had the purpose or conscious object that the firearm be used against the person of another individual. I have already defined for you what it means to act purposefully. It means the same thing here.

The fourth element is that the defendant intended that the firearm be used unlawfully. The mental element of unlawful purpose requires a finding that the defendant possessed a weapon with the conscious objective, desire or intent to use it to commit an illegal act. To commit some act that is prohibited by law.

Intent is a condition of the mind. It cannot be seen. It can be determined by inferences from conduct, words or acts. Intent means a purpose to do something. A resolution to do a particular act or accomplish a particular thing.

If you're satisfied beyond a reasonable doubt the state has proven each of the elements of this offense as I have defined them, then you must find the defendant guilty of possession of the firearm with the purpose to use it against the person of another.

(ECF No. 37-15 at 128-130).

Additionally, the trial court provided a definition of possession that applied to both the possession of a firearm and possession of a handgun counts, as follows:

> The word possession has a meaning in criminal law. What it means is possession means the knowing, intentional control over an item accompanied by a knowledge of its character.
>
> A person must be aware that he possesses the item. A person must know what it is that he possesses. In order to possess, the person must procure the item, be aware of his control for a sufficient amount of time to be able to relinquish control.
>
> A person may possess an item even though it was not physically on his person at the time of the arrest if he, at sometime prior to his arrest, had control and dominion over that item. When we speak of possession we mean a conscious, knowing possession.
>
> Now, in the law a person is in actual possession of an item when he knows what it is. The person has knowledge of its character and knowingly has it on his person at a given time. Now, the law also recognizes that possession may be constructive instead of actual. As I said before, a person who, with knowledge of its character, has direct physical control over an item is in actual possession of that item.
>
> Constructive possession means possession in which the person does not physically have the property but though not physically on his person he [is] aware of the presence and he is able to exercise dominion and control over that property.
>
> A person who although not in actual possession has knowledge of its character, has both the power and the intention at a given time to exercise control over a thing either directly or through another person is in constructive possession of that property. To give you an example, this pen is in my left hand. I am now in actual possession of that pen because I know what it is. I know it is a pen. I am aware of its existence in my left hand and I have it o my person at the present time. I am in possession, actual possession of this item.
>
> Now if I put the item on the bench, I am now in constructive possession of that item. Because I have knowledge of its character and I have the ability to exercise control over that pen by reaching out for it. So I am now in constructive possession of that property.

Now to give you another example. Right now on my secretary's desk there is a series of pencils. Now although I am not in actual possession of those pencils and they are on my secretary's desk, I have the ability to exercise control and dominion over those pencils through my secretary. I could go into the back and get those pencils from my secretary.

So the law recognizes both actual possession and constructive possession as I have defined it for you and it also recognizes that possession may be sole or joint. If one person has actual or constructive possession of the thing it is characterized as sole possession of the thing it is characterized as sole possession. If 2 or more people share actual or constructive possession of an item the possession is joint. That is they knowingly share control over that article.

(ECF No. 37-15 at 125-27).

Petitioner has not demonstrated how the trial court's jury instructions on the aforementioned counts were inconsistent with the instructions required under New Jersey law, let alone how the instructions violated his due process right to a fair trial. Moreover, the Court notes Respondents' sound argument that Petitioner did not object to the instructions at trial. (ECF No. 28 at 10, 14). Upon review by this Court, the instructions did not violate Petitioner's constitutional right to due process.

### Judge Lester's Re-Charge

Petitioner also vaguely submits that the substitute judge's recharge to the jury was improper. (ECF No. 26 at 19). The presiding judge, the Honorable Judge Theodore Winard, was substituted by the Honorable Judge Betty Lester shortly after the jury began its deliberations. Judge Lester re-instructed the jury on some of the charges and provided answers to the jury questions. Moreover, in an abundance of caution, Judge Lester re-read the transcript of Judge Winard's instructions to the jury, after reviewing them and determining that they were appropriate.

### Response to Jury's Questions

Over the course of deliberations, the jury sent multiple notes to the trial court. First, the jury sent a note requesting the following and the trial court responded accordingly:

> Again the questions that I received yesterday were as follows: We'd like to know the following, was John Florence in the car when Syhim said he didn't want to take part in the robbery; what was said in reference to John Florence being in the car; and when did John Florence get into the car.
>
> My court reporter has isolated those areas of the transcript of Syhim Cobb which we believe corresponds to the jury's questions. So my court reporter will now read that back to you.
>
> (Whereupon the following testimony of Syhim Jackson, taken on 6/14/94 was read back to the jury: Direct examination. Page 69, line 20 to page [illegible], line 2, Page 102, line 6 to page 104, line 12. Page 105, line 14 to page 106, line 22.)
>
> (Cross-examination. Page 161, line 15 to page 163, line 25. All as requested by counsel.)

(ECF No. 37-16 at 3).

Next, the jury sent a note requesting the following information, which was immediately provided by the trial court.

> THE COURT: Ladies and gentlemen, I have your note which we've marked as Court exhibit number four. It has a series of different questions. We'll answer the questions in the order that they are presented to us.
>
> Number one, when did Phillisa James report the robbery. My response to that question is, ladies and gentlemen, you're going to have to rely on your own recollection as to the testimony with respect to that question.
>
> The second question, please Tanji Hyman testimony about the coats being removed form the word time dash RX-7 or Acura, question mark at Clinton and 18th Street.
>
> We've isolated relevant portions of the testimony that we feel will respond to the jury's question. Lorraine will read that to you now.

[Whereupon the following testimony of Tanji Hyman taken on 6/14/94 was read back: Direct Examination. Page 19, line 12 to page 19, line 20. Page 24, line 4 to page 28, line 22.)

(Read back is continued with Cross-examination. Page 35, line 8 to page 35, line 15. Page 36, line 25 to page 37, line 12. Page 41, line 21, to page 41, line 15. All as requested by counsel.)

THE COURT: Moving on to the question, need to know which witnesses identified June, quote, close quote, in the RX passing Clinton at 18th Street.

Well, the Court's response to that question, again the jury is going to have to rely on its own recollection as to the testimony with respect to that question. Question number five, Tracey Bowers time being shot at. Tracey Bowers testified that he stayed at the club until 4 a.m.

Next question. Acura being found in the lake, time is needed. We'll have a read back in response to that question.

(Whereupon, the following testimony of Bohdan Kaznowskiy was read back: Direct examination. Page 47, line eight to page 47 line 15 as requested by the Court.)

MR. TAYLOR: Judge, could I be heard at side-bar?

(Side-bar)

MR. TAYLOR: Judge, I'm not sure whether the reporter left out a question before that because the questions started with the question of the time of the dispatch. I thought there was a couple questions before.

THE COURT: Bring it over.

MR. TAYLOR: First of all, do you recall how it was that you responded to Weequahic Park. Yes, sir, we were dispatched at about 3:30. Do you recall where you were. That's how he first—I think that should be read.

THE COURT: We'll read back the entirety from the beginning to the end.

(In the presence of the jury)

22

THE COURT: The reporter is going to again read back to you the testimony of Officer Kaznowskiy. Go ahead.

(Whereupon, the following testimony of Bohdan Kaznowskiy was read back: Direct examination. Page 46, line 25 to page 47, line 15.)

THE COURT: All right. Thank you. The last question is, what time did T. Parker speak to Singletary when he was agitated.

Well, on that question, the jury will have to rely on its own recollection as to the testimony of Mr. Singletary. Now that completes our response to all of the questions.

(*Id.* at 14-17).

This Court notes that an extensive colloquy took place between the trial judge and the attorneys for both sides about how to properly respond to all of the aforementioned questions, before the jury was instructed. (*Id.* at 4-14, 17-19 ). Additionally, the jury sent notes regarding issues such as jury dismissal times and other administrative issues.

Finally, the jury sent the following note asking for a recharge of the some of the charged counts.

All right. Last evening you requested to be recharged on the law of felony murder, purposeful and knowing murder, aggravated manslaughter, reckless manslaughter, first and second degree robbery and I am going to recharge you on the law of those offenses. I'm going to try to do that to the degree it's humanly possible, exactly as Judge Winard gave it to you the first time.

(ECF No. 37-17 at 10).

Judge Lester re-charged the jury on the aforementioned counts only after extensively consulting with counsel for both sides on the appropriate fashion to address the jury's question. (*Id.* at 3-10). The issue of Judge Winard's failure to word the accomplice culpability requirement into the robbery instruction in the exact same language as he did with the murder and aggravated manslaughter charges, was resolved with the parties agreeing that Judge Lester should precisely

word that information in the robbery recharge. (*Id.* at 8-9). Although a slight deviation from Judge Winard's charge, the parties agreed that it would best instruct the jury on Petitioner's accomplice liability with respect to the robbery offense. (*Id.* at 9-10).

Generally, "[a] trial court ... has discretion in deciding how to respond to a jury note." *Marra v. Larkins*, 46 F. App'x 83, 87 (3d Cir. 2002). Here, what was read to the jury by Judge Winard was exactly what New Jersey law provides. Moreover, the trial court's recharge, which included the accomplice liability requirement of robbery, was provided in order to protect Petitioner's interest. However, assuming *arguendo* that only Judge Winard's original robbery instruction that omitted some of the accomplice liability language was re-read on recharge, this would not amount to a violation of Petitioner's constitutional rights. *See Henderson*, 431 U.S. at 155 ("An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."); *see also Hallowell v. Keve*, 555 F.2d 103, 110 (3d Cir. 1977) ("[N]ot only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction.") (citations omitted).

C.    Ineffective Assistance of Counsel

Petitioner also raises several ineffective assistance of counsel claims, which this Court will deny. The standard that applies to Petitioner's ineffective assistance of counsel claims is as follows:

> Claims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To

succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

1. Ineffective Assistance of Counsel for Failing to Raise Affirmative Defense to Felony Murder.

Petitioner argues that his trial counsel was ineffective insomuch as counsel failed to fully investigate any possible affirmative defenses to the felony murder count. (ECF No. 26 at 37-40).

In order to make out a claim for *Strickland* prejudice for counsel's alleged failure to investigate and prepare for trial, Petitioner "must make a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming admissibility in court, would have produce[d] a different result.'" *Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *5 (D.N.J. May 2, 2016) (quoting *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996)); *see also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir 2011) (a petitioner making inadequate investigation claims "has the burden of providing the court with specific information as to what the investigation would have produced"); *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989) (same); *accord United States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008).

As a threshold matter, this claim was not raised in Petitioner's state filings. Nonetheless, this Court will address the merits of Petitioner's unexhausted claim. *See Granberry*, 481 U.S. at 131, 135.

Petitioner asserts, without providing evidentiary support, that had counsel more fully investigated, he would have been able to successfully provide an affirmative defense to felony murder. (ECF No. 6-3 at 31). Under New Jersey law, where a defendant is not the only participant in the underlying crime, an affirmative defense to felony-murder is available if the defendant:

(a) [d]id not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and

(b) [w]as not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury and of a sort not ordinarily carried in public places by law-abiding persons; and

(c) [h]ad no reasonable ground to believe that any other participant was armed with such a weapon, instrument, article or substance; and

(d) [h]ad no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.

N.J.S.A. 2C:11–3(a)(3).

Here, the evidence simply does not support the statutory criteria to have warranted the affirmative defense to a felony murder charge. Several witnesses saw defendant and his co-defendants, albeit at times wearing a ski mask, throughout parts of the robbery spree during the commission of the crime. The police found some of the fruits of the robberies in the vehicle Petitioner's co-defendant Rashon Barkley was stopped in. Additionally, Petitioner was seen in every vehicle associated with the robberies that evening. Finally, Petitioner's acquaintance, Syhim Jackson, testified about being in the presence of the three co-conspirators when they agreed to commit the robberies that day. (ECF No. 37-7 at 102-04). The record reflects that trial counsel deftly cross-examined the state's witnesses, particularly Syhim Jackson, about whether Petitioner was with the co-defendants the night of the robbery. Although counsel attempted to argue that Petitioner may not have been involved because Jackson testified that Petitioner was not present earlier in the evening of January 15th when Jackson and Thomas Parker stole the Acura Legend, the evidence demonstrated that Petitioner eventually

convened with his co-conspirators and agreed to carry out the robberies. (ECF No. 37-7 at 147-148).

This Court's review of the trial record indicates that trial counsel's not having raised an affirmative defense to felony murder was not ineffective. The Court also notes Respondents' argument that counsel attempted to offer an alibi through the testimony of Petitioner's grandmother and sister. Because the facts in the record do not support Petitioner's bald assertion of ineffective assistance, Petitioner is not entitled to habeas relief on his ineffective assistance claim.

2. Ineffective Assistance of Counsel for Failing to Object to Improper Jury Instructions.

Petitioner also claims that his trial counsel's failure to object to the court's jury instructions and Judge Lester's recharge and response to the jury's questions was ineffective. (ECF No. 26 at 37).

As previously discussed, the court's jury instructions and response to the jury did not violate due process. Notwithstanding counsel's decision not to object to Judge Winard's original set of robbery instructions, though missing a segment of the accomplice liability instructions, it was later provided to the jury by Judge Lester. *See Jacobs v. Horn*, 395 F.3d 92, 111 (3d Cir. 2005) ("[A] single instruction to the jury may not be judged in artificial isolation but must be viewed in the context of the overall charge.") (citations omitted). Moreover, as to the claim that counsel should have objected to the recharge and jury questions, the record reflects that trial counsel engaged in a thorough discussion with the trial court about how to properly respond to every jury question and was satisfied with the court's proposed response to all of them.

Thus, Petitioner has failed to show deficient performance or *Strickland* prejudice. Petitioner is not entitled to habeas relief on this claim.

3. Ineffective Assistance of Counsel for Failing to Move for a Judgment of Acquittal on Robbery Counts Pertaining to Victims Bunny Burt and Sheila Rodriguez.

Petitioner next submits that counsel's failure to move for judgment of acquittal with respect to the counts relating to the robbery of decedent Bunny Burt and Sheila Rodriguez was ineffective. (ECF No. 6-3 at 46-47). The Court notes that this is the only ineffective assistance claim that was raised in Petitioner's direct appeal, and subsequently adjudicated by the Appellate Division; albeit there he argued that a motion for judgment of acquittal was appropriate for several more counts of the indictment. (ECF No. 28-1 at 36-37).

The state court rejected Petitioner's claim, providing:

> Our review of the record discloses that there was sufficient evidence to create a jury question as to each of these charges. Accordingly, trial counsel's decision not to move for a judgment of acquittal as to any cannot be seen as ineffective assistance.

*Id.*

In his federal habeas petition, Petitioner argues:

> For if counsel requested a verdict of acquittal on the robbery counts of Burt and Rodriguez and succeeded, which he should have since no evidence indicated a robbery and taking of any object of either, nor a request to relinquish such accompanied by a threat, this would have precluded the felony murder conviction resultant in the life sentence petitioner was given on that count.

(ECF No. 26 at 38-39).

At Petitioner's trial, Bunny Burt's best friend, Sheila Rodriguez, testified that a black car containing three individuals later identified as Petitioner and his co-defendants, began following the two women who were in a car that Burt was driving. (ECF No. 37-6 at 20-21). Both women were wearing leather jackets. Once Burt realized that they were being followed, she stopped her vehicle to determine why. (*Id.* at 21). It was then that the front passenger of the pursuing vehicle

exited the vehicle, walked to Burt's driver's side window and pointed a gun at her. Rodriguez testified that the gunman did not speak to them before Burt drove away. The vehicle pursued Burt and Rodriguez while repeatedly colliding with Burt's car and eventually immobilizing Burt's car. (*Id.* at 23-24). The passenger exited the vehicle again, this time shooting Burt while Rodriguez crouched down on the floor of the vehicle. (*Id.* at 29-30). The assailant fled immediately and there was no indication that any of the two women's belongings were taken. (*Id.*)

The state court's judgment that a motion for judgment of acquittal was unlikely to be granted is reasonable in light of the evidence. The trial testimony shows that a masked man carrying a gun approached a vehicle containing two individuals wearing leather coats. When the individuals drove off, they were pursued. Once again, the passenger of the pursuing vehicle got out of the car and this time he shot Burt and fled. The record reflects that the three men went on a robbing spree against victims wearing leather coats immediately before Burt's shooting and attempted to rob more individuals immediately after. Additionally, co-defendant Rashon Barkley who, unlike the Petitioner and Parker, was apprehended on the same day as the robberies, had multiple coats in his possession, peaking the observing police officer's attention. (ECF No. 37-11 at 79). This evidence was sufficient to demonstrate that the decedent and her passenger were about to be robbed. The state court's decision is not inconsistent with *Strickland*, because the attorney's motion would most likely have been denied. As such, the state court's decision was not contrary to clearly established federal law. *See United States v. Moore*, 921 F.2d 207, 210 (9th Cir. 1990) ("[T]he lawyer's failure to move for a directed verdict did not prejudice Moore because it would have been meritless.") Consequently, Petitioner is denied habeas relief with respect to this claim.

D.    Trial Court's Erroneous Evidentiary Ruling

Petitioner next claims that the trial court erroneously admitted out-of-court identifications in violation of his constitutional rights. Specifically, Petitioner argues that the out-of-court identifications made by two state witnesses were unduly suggestive "because the state investigator showed photos to witnesses Waterman and Spruill solely so that petitioner would be identified as being known to them, but not identified as a perpetrator of any of the criminal acts alleged." (ECF No. 26 at 51). Petitioner cites to Supreme Court precedent including *Perry v. New Hampshire*, 565 U.S. 228 (2012), *Neil v. Biggers*, 409 U.S. 189 (1972) and *Manson v. Braithwaite*, 432 U.S. 98 (1977), to argue that the identification was inherently unreliable. However, he does not make any arguments establishing what about the identification procedure was improper.

Petitioner unsuccessfully raised this claim on direct appeal. (*See* ECF No. 28-7 at 44). The state court summarily dismissed the claim, along with a series of other claims without providing a detailed explanation.

At trial, witness Ontario Waterman testified that he was exiting a Newark nightclub with his friend Dennis Spruill in the early morning hours of January 16, 1993, when he observed a dark colored Acura Legend drive past at a moderate speed. (ECF No. 37-10 at 20-21). Waterman was able to observe the vehicle's occupants and recognized Petitioner, Thomas Parker and Rashon Barkley, all three of whom he was acquainted with by virtue of their neighborhood ties. Waterman further testified that all three of the vehicle's occupants were wearing dark colors but did not have anything obstructing their faces. Waterman subsequently met with Detective William Issets to provide a statement about observing the three men in the vehicle. Issets provided Waterman with a photo array from which Waterman identified Petitioner as one of the three passengers in the Acura Legend. (ECF No. 37-12 at 79).

The legal doctrine discouraging unduly suggestive pre-trial identifications pertains to the actual identification procedure itself. *See United States v. Foote*, 432 F. App'x 151, 153 (3d Cir. 2011) ("Recognizing that the use of photographs to identify criminals may risk identification, the Supreme Court has held that a pretrial identification must be set aside when the identification procedure is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968) (internal quotation marks omitted)). Here, Petitioner appears to be arguing that Waterman's identification was prejudicial because Waterman did not see Petitioner or his co-defendants while in the commission of the charged crimes. Nonetheless, Petitioner has not established how Waterman's identification violated Petitioner's due process rights. Petitioner was observed on the night of an hours-long robbing spree wearing dark clothes in one of the two vehicles identified as having been used by the perpetrators during the course of the robberies. Even if Petitioner was challenging the reliability of Waterman's identification, Waterman's photographic identification was not the result of that sole observation of Petitioner, but rather a result of his recognizing the three vehicle occupants from prior occasions when he made their acquaintance. Accordingly, Petitioner is denied habeas relief with respect to this claim.

E. Juror Misconduct

Petitioner next claims that the trial court erroneously denied his motion for a new trial despite information that, among other things, extraneous prejudicial information was brought to a juror's attention, in violation of his Sixth Amendment right to a fair trial before an impartial jury. (ECF No. 26 at 41-50). This claim formed the basis of Petitioner's motion to voir dire a juror and subsequent motion for a new trial in 2007. In 2005, Anne Gordon, a juror in Petitioner's trial, contacted Petitioner's trial counsel, Edward Jerejian, indicating that she had qualms about

Petitioner's conviction. Edward Jerejian, who by that time was preparing to ascend to the Bergen County Superior Court bench, advised her to relay this information to Assistant Public Defender John McMahon. After speaking with Jerejian, Gordon subsequently wrote a letter to John McMahon, which she later testified took her several months to draft. (ECF No. 1-2 at 4-5). As a result of this communication from Gordon, the trial court held a hearing to voir dire Anne Gordon, as well as a subsequent proceeding to voir dire Petitioner's trial counsel, Edward Jerijian. Gordon testified that she was informed by another juror during the course of deliberations that "word on the street was that Mr. Florence was present at the one robbery where the murder occurred." (ECF No. 36-2 at 42). After rejecting Petitioner's request to voir dire the particular juror who may have made the extraneous comment or any of the other jurors, the trial court denied the motion and the denial was affirmed by the Appellate Division.

In its ruling, the Appellate Division explained:

> The judge's decision was solidly grounded on his finding that, given the extraordinary lapse of time between defendant's trial in 1993 and Gordon's letter in 2006, the reliability and trustworthiness of Gordon's recollection were insufficient to support the conclusion that the jury verdict had been impermissibly compromised.
>
> Where our "study of the record . . . convinces us that the trial court [] carefully scrutinized the testimony and the record before making factual determinations," we will not "engage in an independent assessment of the evidence as if [we] were the court of first instance." *State v. Locurto*, 157 N.J. 463, 471 (1999). Here, Gordon's recollection of the alleged communication in the jury room was sketchy, at best. As noted, she could not recall when the comment was allegedly made, which, if any, other jurors may have been within earshot of the comment, or the specific words stated. Indeed, these gaps in Gordon's recollection may well have accounted for her delay in committing her feelings to writing until December 2006.
>
> We are satisfied that the judge properly denied defendant's motion for a new trial based upon his finding Gordon's testimony failed to demonstrate that impermissible extraneous information had been

communicated to the jury. *State v. Athorn*, 46 N.J. 247, 252, cert. denied, 384 U.S. 962, 86 S, Ct. 1589, 16 L. Ed.2d 674 (1966).

It is well settled that the test for determining whether a new trial will be granted because of the misconduct of jurors or the intrusion of irregular influences is whether such matters could have a tendency to influence the jury in arriving at its verdict in a manner inconsistent with the legal prods and the court's charge. If the irregular matter has that tendency on the face of it, a new trial should be granted without further inquiry as to its actual effect. The test is not whether the irregular matter actually influenced the result, but whether it had the capacity of doing so.

[*Panko v. Flintkote Co.*, 7 N.J. 55, 61 (1951).]

Notably, Gordon did not testify that the juror's comment definitely influenced her own assessment of defendant's guilt or innocence. Nor did her testimony establish that the juror's comment intruded into the jury's deliberations or in any other way meet the test in *Panko, supra. See State v. Grant*, 254 N.J. Super. 571, 583 (App. Div. 1992) (a new trial will be granted only "where jury misconduct or intrusion of irregular influences into the jury deliberations" satisfied the test in *Panko*).

*State v. Florence*, Indictment No. 93-04-1390, 2011 WL 611700 at *3-4 (N.J. Super. App. Div. Feb. 23, 2011) (per curiam).

Extraneous information is that which "derives from a source 'external' to the jury." *Warger v. Shauers*, 135 S. Ct. 521, 529 (2014) (citation omitted). If or when such a trial error occurs, habeas relief cannot be granted unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The United States Supreme Court has articulated that the question of an individual juror's impartiality "is plainly one of historical fact" as opposed to "one of mixed law and fact." *Patton v. Yount*, 467 U.S. 1025, 1036 (1984). Moreover, the trial court's findings of juror impartiality are given substantial deference. *See Skilling v. United States*, 561 U.S. 358, 363 (2010) ("A trial

court's findings of juror impartiality may be overturned only for manifest error.") (citation and internal quotation marks omitted).

> Trial courts have broad discretion in assessing juror impartiality. *See Irvin,* 366 U.S. at 723–25 (citations omitted); *Tinsley v. Borg,* 895 F.2d 520, 525 (9th Cir.1990) (citations omitted), *cert. denied,* 498 U.S. 1091, 111 S.Ct. 974, 112 L.Ed.2d 1059 (1991). A state court's finding that a juror is impartial is entitled to significant deference. *Patton v. Yount,* 467 U.S. 1025, 1037 n. 12, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984) (habeas courts owe special deference to state court's determination that juror is impartial) (citations omitted); *see also Tinsley,* 895 F.2d at 525 ("The findings of state trial and appellate courts on juror impartiality entitled to "high measure of deference.") (quoting *Rus* hen *v. Spain,* 464 U.S. 114, 120, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983)).

> Even in cases where juror misconduct has occurred, this Court cannot grant habeas relief unless petitioner suffered prejudice under *Brecht. See Jeffries v. Blodgett,* 5 F.3d 1180, 1190 (9th Cir.1993) (citing *Brecht,* 507 U.S. at 637), *cert denied,* 510 U.S. 1191, 114 S.Ct. 1294, 127 L.Ed.2d 647 (1994).

*Gutierrez v. Biter*, No. 13-3743, 2015 WL 3866221 at *14 (C.D. Cal. June 18, 2015).

Here, Gordon's testimony was almost entirely ambiguous and inconsistent. Gordon had difficulty providing answers to questions as benign as her city of residence during the period that she served as a juror in Petitioner's trial. She also testified about a telephone call where she disclosed the extraneous information to trial counsel less than a year after Petitioner's trial, which trial counsel later testified he had no recollection of despite the enormity of such a potential disclosure. Gordon could not recall exactly how the juror knew of the information, but it was clear that he received the information from other sources and had no independent knowledge of Petitioner's actions on the day of the charged offenses. (ECF No. 36-2 at 64). She also could not determine whether anyone else on the jury heard her conversation with the unnamed juror who provided the information, because he was speaking in a rather low voice and the other jurors were all engaged in conversation amongst themselves. (*Id.* at 52-53). Moreover, the record reflects that

Gordon testified that "[m]ainly, I wanted to know something about the character of Mr. Florence." (*Id.* at 43). She also indicated in her letter and subsequent testimony that she disagreed with the theory of accomplice liability but nonetheless found Petitioner guilty of the charges. (*Id.* at 71-72). Consequently, Gordon's testimony does not suggest that the extraneous information influenced her guilty verdict.

For the foregoing reasons, the state court's determination was not an unreasonable application of clearly established federal law. Therefore, the claim is denied.

F.    Cumulative Error

Finally, Petitioner submits that habeas relief is necessary as a result of cumulative error. "[I]t is urged the cummulative [sic] violations had by both a tainted jury coupled with instructions which further obfuscated the matter served to result in proceedings that denied both a trial which was fair and due process as envisioned pursuant to the Sixth and Fourteenth Amendments." (ECF No. 26 at 56).

The cumulative error doctrine "allows a petitioner to present a standalone claim asserting the cumulative effect of errors at trial that so undermined the verdict as to constitute a denial of his constitutional right to due process." *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 542 (3d Cir. 2014). Cumulative errors warrant habeas relief "if they had a substantial and injurious effect or influence in determining the jury's verdict." *Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007) (citation omitted).

As discussed above, neither Petitioner's erroneous jury instruction claim nor his jury impartiality claim prejudiced him at trial. The state presented an abundance of evidence including multiple robbery victims, witnesses who observed Petitioner in the getaway cars, as well as a

witness who overheard the three co-conspirators agree to commit the robberies. Therefore, Petitioner's cumulative error claim fails.

### III. <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason could not disagree with this Court's conclusion that Petitioner's habeas petition is without merit, Petitioner has failed to make a substantial showing of the denial of a constitutional right and Petitioner's habeas petition is inadequate to deserve encouragement to proceed further. As a result, this Court will deny Petitioner a certificate of appealability.

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find it debatable whether this Court is correct in its procedural ruling. Therefore, no certificate of appealability shall issue.

# IV. **CONCLUSION**

For the reasons expressed above, Petitioner's petition for a writ of habeas corpus is

DENIED and Petitioner is DENIED a certificate of appealability.  An appropriate order follows.

JOSE L. LINARES,
Chief Judge, United States District Court